

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2004

# Brown v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4766

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Brown v. Johnson" (2004). *2004 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4766

WILLIAM BROWN,

Appellant

v.

SUPERINTENDENT P. JOHNSON;
REVEREND KATHY HIGGINS; MAJOR
HASSETT; FATHER GEORGE MONECK,
all at SCI-Greene at time of
events; FATHER FRANCIS T. MENEI

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 99-cv-00915)
District Judge: Honorable William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2004

Before: NYGAARD, AMBRO, and GARTH, Circuit Judges

(Opinion filed November 18, 2004)

OPINION

AMBRO, Circuit Judge

William Brown appeals the District Court's order granting summary judgment in

favor of the Superintendent and other Department of Corrections ("DOC") officials at the State Correctional Institution at Greene, Pennsylvania ("SCI-Greene"). Brown alleges in this § 1983 claim that enforcing the DOC's grooming policy against him violated his First Amendment and equal protection rights under the United States Constitution and constituted illegal retaliation. As the District Court correctly granted summary judgment on Brown's First Amendment claim and he waived his equal protection and retaliation claims, we affirm the District Court's order.

1.    BACKGROUND

Brown was an inmate at SCI-Greene from 1994 through 2002. He was also recommitted to that facility from 2003 until 2004 and has now been released on parole. He asserts that he practices Rastafarianism and did so during his incarceration.

The DOC's grooming policy requires that, among other things, the length of an inmate's hair not fall below the top of his shirt collar. During some of Brown's time at SCI-Greene, his hair length violated this policy. Brown received several misconduct reports and spent two years and seven months in a Restricted Housing Unit ("RHU") for failing to comply with direct orders to cut his hair. Indeed, Brown was kept in RHU until he so complied. Because Rastafarianism prohibits its followers from cutting their hair, Brown asserts he was entitled to a religious exemption to the DOC grooming policy.

Exemptions from the grooming policy's hair length requirements are granted for legitimate religious reasons on a case-by-case basis. In 1996 and September of 1997,

2

Brown made requests for grooming exemptions because of his religious beliefs. On each occasion, Brown met with a Facility Chaplain who concluded Brown demonstrated little knowledge of the beliefs and practices of Rastafarianism. Additionally, Chaplaincy Department records show that Brown had previously practiced the Muslim, Protestant, and Native American religions, and also had attended numerous services with the Moorish Science Temple of America. Based on the Facility Chaplain's recommendation, the Superintendent thereafter denied Brown's requests.

In December 1997, the DOC amended its grooming policy to require an inmate seeking a religious exemption to submit a written document, apparently from an outside source, indicating that he had a history of adhering to the tenets of the particular faith group. In 1998, Brown submitted a letter from an acknowledged Rastafarian leader stating that Brown had written to join the leader's church only one month earlier. The Superintendent again denied Brown's request, finding that the letter did not show Brown had a sufficiently long history of adhering to Rastafarianism.

Brown filed a complaint with the United States District Court for the Western District of Pennsylvania alleging various constitutional violations. Thereafter, the defendants sought and obtained summary judgement. Brown appeals, asserting that the District Court did not adequately analyze his First Amendment claim and failed to consider both his equal protection and retaliation claims.

2.    ANALYSIS

a.    Brown's First Amendment Claim

Prison regulations need only be rationally related to legitimate penological interests to survive constitutional challenge. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In addition, our Court has held that a prisoner challenging a prison regulation on the ground that it interferes with the prisoner's right to exercise religion freely must first establish that his alleged beliefs are both sincerely held and religious in nature. *DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000) (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981)).

In *Turner*, the United States Supreme Court provided four factors to determine whether a prison regulation rationally relates to legitimate penological objectives. 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, where inmates have alternative means of exercising the asserted right, courts should be "particularly conscious" of the deference owed to corrections officials in establishing prison regulations. *Id.* at 90. Third, if accommodation of the asserted right will have a significant effect on other inmates, prison staff, or the allocation of prison resources, courts should be particularly deferential to the informed decisions of corrections officials. *Id.* Last, an absence of ready alternatives is evidence of the reasonableness of a regulation. *Id.*

The District Court, by adopting the Magistrate's Report and Recommendation, found against Brown on all four factors. Brown has not challenged these findings in his brief to us. Rather, he asserts that our holding in *DeHart* required the District Court first to determine whether Brown's beliefs were both sincerely held and religious in nature before conducting a *Turner* analysis.

Brown is correct insofar as *DeHart* did conclude that the mere assertion of First Amendment rights does not automatically bestow constitutional protections — "if a prisoner's request for [a religious accommodation] is *not* the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request." *DeHart*, 227 F.3d at 52. Therefore, the *DeHart* requirements of both sincerity and religious nature must be satisfied before a court need undertake a *Turner* analysis. *Id.*

In this case defendants explicitly assumed in their summary judgment motion that Brown's beliefs were sincerely held and religious in nature. This effectively resolved any *DeHart* issues in Brown's favor. Furthermore, as *DeHart* makes clear, it is up to the prisons themselves to assert challenges to the sincerity or religious nature of a prisoner's beliefs, and where no such challenges are made, the religious nature and sincerity of the beliefs are assumed. 227 F.3d at 52. Here, as in *DeHart*, defendants made no such challenge. Brown claims that defendants did not stipulate that Brown's beliefs were sincerely held and religious in nature. Even were this true, it would be irrelevant. If, instead of assuming the validity of Brown's beliefs and undertaking the *Turner* analysis,

5

the District Court had addressed whether Brown's beliefs were sincerely held and religious in nature and concluded that they were not, Brown would still lose. The District Court therefore did not err by considering the *Turner* factors without undertaking a *DeHart* analysis. Thus, we affirm summary judgment against Brown on his First Amendment claim.

       b.      <u>Brown's Equal Protection and Retaliation Claims</u>

Brown also appeals the District Court's failure to consider his equal protection and retaliation claims. Though he made these claims in his initial complaint, neither the Order of the District Court granting summary judgment, nor the Report and Recommendation of the Magistrate that informed that Order, considered them. Defendants respond that, though Brown raised equal protection and retaliation in his complaint and the District Court failed to address these matters, his failure to raise them at the summary judgment stage was a waiver. We agree.

In its scheduling order of September 26, 2003, the Magistrate Judge ordered that Brown file a response to defendants' motion for summary judgment by October 16, 2003. In that order the Magistrate Judge warned that "failure to file a response to the motion will be construed as consent to the granting of [it]." Brown responded only by filing a motion to extend time to file a response (and then but two days before the response was due). Though Brown's request was denied, he still filed nothing. This waives both claims. As the First Circuit stated in *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st

6

Cir. 1995), "[e]ven an issue raised in the complaint but ignored at summary judgment may be deemed waived. 'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" *Id*. at 678 (quoting *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986)). Furthermore, "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983). That is this case.

\* \* \* \* \*

For these reasons, we affirm the District Court's grant of summary judgment.